## Commonwealth, Appellant, *v*. Gilkeson.

*Collateral inheritance tax—Parent and child—Decedent's estate—Illegitimate—Legitimation by subsequent marriage.*

Children born prior to marriage, who have been legitimated by the subsequent marriage of their parents, are not liable to pay a collateral inheritance tax upon the estate passing from their father to them.

Argued Nov. 20, 1901. Appeal, No. 211, Oct. T., 1901, by plaintiff, from judgment of C. P. Bucks Co., May T., 1900, No. 16, on case stated in case of Commonwealth v. Benjamin F. Gilkeson, Administrator de bonis non of the Estate of George S. Kitson, Deceased. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Case stated to determine liability to collateral inheritance tax.

Yerkes, P. J., filed the following opinion:

The deceased was the father of two sons, both of whom were born prior to the marriage of their father to their mother. The marriage between their parents was duly and regularly solemnized, and followed by cohabitation.

The case stated raises the single issue whether the commonwealth is entitled to collect the collateral inheritance tax upon the estate passing from the deceased to his two legitimated sons.

The Act of May 6, 1887, P. L. 79, provides for the imposition of the tax upon the estate passing to any person or persons " other than to or for the use of father, mother, husband, wife, children and lineal descendants born in lawful wedlock, or the wife or widow of the son of the person dying seized or possessed thereof."

The act is a codification of previous legislation and is entitled " An act to provide for the better collection of collateral inheritance taxes." So much of it as affects the issue under consideration follows the phraseology of the 1st section of the Act of April 7, 1826, P. L. 227.

The concluding section provides that " all laws or parts of laws, heretofore approved, relating to the collection of the collateral inheritance tax, and inconsistent herewith, be and the same are hereby repealed."

That part of the old law with which we have to do not being inconsistent was therefore specially excepted by the legislature from any repeal or consequent change. Besides, it is a general rule that the re-enactment of a previous statute or a provision of it, is construed not to be an implied repeal of the enactment but a continuation thereof, so that all interests under the original statute remain unimpaired ; 23 Am. & Eng. Ency. of Law (1st ed.), 515, and note.

This principle applies also to a revision which repealed the acts, collated and consolidated, but immediately in its own provisions re-enacted them literally or in substance: Middleton v. New Jersey West Line R. R. Co., 26 N. J. Eq. 269. See also

opinion of Judge ENDLICH in Barclay v. Leas, 9 Pa. C. C. Rep. 316, where the authorities are cited.

Therefore the terms of the repealing section of the act of 1887, and authority settle that the legislature did not contemplate any change, in respect to the contention of this case, from the law as it then stood.

Another law passed May 14, 1857, P. L. 507, provides " that in any and every case where the father and mother of an illegitimate child or children shall enter into the bonds of lawful wedlock and cohabit, such child or children shall thereby become legitimated, and enjoy all the rights and privileges, as if they had been born during the wedlock of their parents."

The effect of this law was to remove the taint of illegitimacy from those who were in fact the children of the parents married subsequent to their birth, to invest them with all the rights of children born in wedlock and to take them out of the exception of the collateral inheritance law of 1826. While the supreme court have not decided the question before us, they have left little room for doubt of their understanding of the act of 1857, as to the status in which it places the children affected by it.

In discussing a special act drawn in similar terms to the general law of 1857, Mr. Justice WOODWARD said : " These are very large enabling words. The very definition of a legitimate person is one born in lawful wedlock." " They " (the legislature) " meant undoubtedly that the children should have the same legal capacities as if their father had been, at the time of their birth, the lawful husband of their mother." Of one of them he said, " Then let it be said that he was legitimate ; that though not born in lawful wedlock, the transcendent power of the legislature had made him equal to a son born in lawful wedlock."

" How do we know that these children were not born in lawful wedlock, the legislature having said they were ? How can we impeach the union between the parents, whatever it was, since the legislature has made it lawful ? We have seen that the words used by the legislature were large enough to confer all the civil rights of legitimacy, and as it was a remedial and humane law, it ought not to be cramped in the construction : " Killam v. Killam, 39 Pa. 120.

Justice BURNSIDE did not question the correctness of the opinion of Judge BREDIN, that under a similar act of legitima-

tion the commonwealth would not be entitled to the collateral inheritance tax, because the government had given him the rights of a child born in lawful wedlock, but held that in the case before him the tax could be collected, because the act was not passed until after the right to the tax had vested: Galbraith. v. Commonwealth, 14 Pa. 258.

The case of Commonwealth v. Stump, 53 Pa. 132, was more direct upon this point. There Justice WOODWARD said : " Had the legitimating act been passed before the devise took effect, the devisees would, I take it, have held an estate exempt from the collateral inheritance tax, for they would have been as capable in law of taking as if they had been born in lawful wedlock ; but their estate vested at the death of the testator, which was in May, 1853, and if illegitimate then the commonwealth's right to the tax vested then also. The legitimating act passed the next year contains no word to release the commonwealth's vested right."

Tharp v. The Commonwealth, 58 Pa. 500, was a case of adoption by an act of assembly, where the child was not actually related to the adopting parents and therefore lacked an essential element to bring it within the legitimating act of 1857. The expression of opinion in Commonwealth v. Stump, bore no relation to such a case, but was therein declared to be but a dictum, although THOMPSON, C. J., declined to discuss the value of the dictum. That the case was referred to at all by the learned chief justice inclines us to the belief that the reasoning of Justice WOODWARD in Killam v. Killam, and Commonwealth v. Stump, were not carefully considered by him.

Tharp v. The Commonwealth was properly decided upon the authority of Nancrede v. The Commonwealth, which we will refer to later on.

The last case upon this subject, Commonwealth v. Ferguson, 137 Pa. 595, was also under an act of adoption, and although it was said the heir was an illegitimate son of the testator, in a very clear and able opinion by WICKHAM, P. J., then on the court of common pleas of Beaver county, it was clearly shown that the act did not legitimate the legatee, that the legislature probably had no idea that he was a son, and could have had no intent to legitimate him, for so far as appeared upon the record of adoption, he was a stranger to the blood of the per-

son adopting him. Therefore the case turned upon the authority of Nancrede v. Commonwealth. Judge WICKHAM, while evidently leaning to the view that legitimation would relieve the defendant of the tax, felt that it was unnecessary to decide that question. The Supreme Court indorsed this view, using however this significant language:

" That a legacy to an adopted child who stands in the place of an heir would be subject to this tax, is too plain for argument. The reason is that he is not a lineal descendant born in lawful wedlock. He has not the blood."

The Appeal of Edwards et al., 108 Pa. 283, conceded the power of the legislature to confer legitimacy so as to render the child capable of inheriting, etc., yet held that the legislature had not the power to change the fact, of illegitimate birth, so as to enable the child to take as purchaser, under a deed of trust, where lawfully begotten children were the persons described in the deed. That of course would be to change the deed itself. But the legislature may waive the right of the commonwealth itself to a tax, and may repeal altogether or modify a statutory provision. The state through the plenary power and humanity of its legislation may blot out a stain of illegitimacy upon the innocent offspring, where the parents have atoned for their own mistake, by a subsequent marriage. Such was the purpose of the act of 1857, which broadly confers all the rights and privileges of legitimacy or birth in lawful wedlock. How cruelly would this intent be defeated if, while conceding such rights and privileges in all other instances, the commonwealth should be permitted to reserve and exact its own pound of flesh, as a sign that notwithstanding the humane intent of the legislature, the blot must be exposed.

We have found two classes of cases where it has been held that the tax can be collected: first, where the legitimating act was passed after the right of the commonwealth to the tax had vested, and second, those following Commonwealth v. Nancrede, 32 Pa. 389, and holding that adoption with a right to inherit does not relieve of the tax. The conclusion in the first class is self-evident. In the second it is equally sound, for the reason that the act of 1857 legitimating children applies only to those children whose father and mother shall enter into the bonds of wedlock. In such case the obstacle to

legitimacy raised by the collateral inheritance tax, birth out of lawful wedlock is removed, waived, and disregarded by the legislation which, in its design to encourage recognition of the rights of the natural child, has declared that marriage by the parents legitimate as well the child begotton out of lawful wedlock.

Commonwealth v. Nancrede is an authority in support of this view.

LOWRIE, C. J., said: "It is property devised or descending to children and lineal descendants that is exempt from the tax. If the heirs or devisees are so in fact, they are exempt; all others are subject to the tax. Giving an adopted son a right to inherit, does not make him a son in fact. And he is so regarded in law, only to give the right to inherit and not to change the collateral inheritance tax law. As against the law, he has no higher merit than collateral blood relations of the deceased, and he is not at all to be regarded as a son in fact." This is more than a dictum; it is the reason given for ruling the case.

It will be noticed that in the latter class of cases the Supreme Court outlines a very marked distinction between children in fact and who are of the blood of the ancestor, and children by adoption. In Commonwealth's Appeal, 34 Pa., 204, THOMPSON, J., in referring to Nancrede v. Commonwealth, said: "The artificial relation of adoption thus created was undoubtedly good, as to all but the commonwealth, but she did not choose to recognize it as an equivalent to the natural relation when it conflicted with her claim to revenue. These cases point to the duty of looking to the real relations of the parties, in ascertaining who may be subject to the payment of this kind of tax."

In the only decided case that I have found, where it has been held that a natural child born prior to the marriage of its parents, is excused from liability for the collateral inheritance tax by an act of legitimation, an able and learned judge of the orphans' court, Judge HAWKINS, of Allegheny county, in referring to this distinction, correctly says: "The reason of the distinction is to be found in the policy of the law to encourage legitimation as being in recognition of a natural right of children born out of wedlock:" In re Est. of James Gilmore 14 Pitts. L. J. N. S. 113.

Whatever doubts may now exist upon the right of a legitimate child to be freed from the tax (Killam v. Killam, Com. v. Shimp, Com. v. Nancrede, Com. v. Galbraith), all clearly reveal that the judges of the Supreme Court, cotemporary with the act of 1857, entertained little doubt of the right of legitimated children to escape the collateral inheritance tax.

But there are other considerations in favor of the defendants which arise under the collateral inheritance tax itself. In construing statutes imposing public burdens in the form of taxation, where there is an ambiguity which raises a doubt as to the legislative intent, such doubt must be resolved in favor of the persons upon whom it is sought to impose the burden: 23 Am. & Eng. Ency. of Law, 403, and authorities.

The collateral inheritance tax law in its exemption clause uses these words: " Other than to or for the use of father, mother, husband, wife, children and lineal descendants born in lawful wedlock."

Omitting punctuation, which is not the act of the legislature, to which of the antecedent words or excepted classes do the qualifying words, " born in lawful wedlock," apply? Evidently not to the father, mother, husband or wife. The legislature never intended that these should pay the tax unless born in lawful wedlock. It will be answered of course that children and lineal descendants are of the same class, and that they may be included in the same description. But is this so, when we construe an act of assembly detailing subdivisions of a class ?

If this act had been drawn after the enactment of 1857, as new legislation, it would not be so, for it is always a presumption that the legislature does not intend to change or modify the law beyond what it expressly declares either in express terms, or by unmistakable implication: 1 Kent's Com. 464; Dwarris, 695.

While descendants include children, the term children does not include descendants. Ordinarily and properly speaking it does not comprehend grandchildren or issue generally, though sometimes that meaning is applied to it in cases of necessity: 6 Coke; Hunt's Est., 133 Pa. 268.

The act of 1857 legitimates the children of parents who marry.

The collateral inheritance tax subdivides for some purpose

516, (1901).] Opinion of Court below—Opinion of the Court.

lineal descendants and children.   Where one born out of lawful wedlock has an illegitimate child and dies, and after his death his parents marry, the qualifying words of the inheritance law would apply to the child and impose the tax upon it.   Yet it might not have done so in the case of its parent, had he or she survived the marriage of the first parents, for qualifying words and phrases should be confined to their next antecedent: Dwarris on Statutes, 590, 591.

This rule would apply the phrase " born in lawful wedlock " to the next antecedent, viz : lineal descendants only.   While we admit this rule may be overcome by slight circumstances, yet in view of the difficulties of construing the legislation upon the point in question, is it not better to follow the example of Justice WOODWARD when he said : " We think it more congenial to the spirit of our intestate laws, and more honorable to the motives of all parties, to impute to the act, not the narrow and inconsistent purpose contended for, but the more generous intent of eradicating all manner of taint from the blood, and compelling the world to treat them, for all purposes, as legitimate :" Killam v. Killam, supra, 126.

A careful consideration of the statutes and authorities convinces us that the defendants are not liable to pay a collateral inheritance tax.

And now, to wit: October 15, 1900, it is ordered and decreed that judgment be entered upon the case stated in favor of the defendants.

*Error assigned* was the judgment of the court.

*Robert M. Yardley*, with him *John P. Elkin*, for appellant, cited: Com. v. Ferguson, 137 Pa. 595 ; Com. v. Nancrede, 32 Pa. 389 ; Tharp v. Com., 58 Pa. 500 ; Edward's App., 108 Pa. 283.

*B. F. Gilkeson*, with him *Howard I. James*, for appellee, cited: Killam v. Killam, 39 Pa. 120.

PER CURIAM, December 16, 1901 :
The judgment is affirmed upon the opinion of the learned president judge of the court below.